NEGRO PEGGY *vs.* MICHAEL WILSON.—*December,* 1837.

By the act of 1823, ch. 87, the importer of slaves into this state, from any of the United States, is not required in the list which he is to deliver to the clerk of the county, to state the manner in which he acquired his title.

If all the other requisitions of the pre-existing laws are complied with, the list is complete, though the mode of acquiring the title is omitted.

APPEAL from *Allegany* county court.

This was a petition for freedom, filed by *Negro Peggy* on the 29th day of September, 1835. The petition alleged generally that the appellant was a free woman according to the laws of the state—that she ought to be free, and was now held in service by the appellee—prayer for a judgment according to the law and evidence. The appellee denied her right to freedom, on which issue was joined.

At the trial of the cause the petitioner proved by *P. H. Bray*, that sometime in the month of May, 1824, he assisted in bringing the petitioner from *Hampstead* county, *Virginia*, to the residence of the defendant in *Maryland*, in *Allegany* county—that he often saw the petitioner afterwards at the residence of the defendant previous to the institution of this suit, the defendant claiming her as his property.

The defendant, to support the issue on his part, proved by *William Ashley*, that he was employed by the defendant in May, 1824, to go to *Virginia*, and bring the petitioner from thence to *Maryland*. That the defendant purchased the petitioner from *Warner Throckmorton*, of *Hampstead* county afore-

said, which service the witness performed; brought the petitioner to *Maryland*, and left her with the defendant as his slave.    The defendant also proved his bill of sale for said petitioner, dated 26th April, 1824.

The defendant then offered to read from the records of *Allegany* county, the following list, to wit: .

"A list of slaves brought into this *State* from the *State of Virginia*, to work on his farm in *Allegany county, Maryland*, to wit:   One negro woman, *Peggy*—16 years of age.

15*th June*, 1824.     ·                          MICHAEL WILSON."

To the admissibility of which evidence the petitioner objected, on the ground that said list contains no certificate of the manner by which the defendant acquired title to said petitioner, as required by the acts of assembly in such case made and provided.    The county court (*A. Shriver and T. Buchanan, J's*) overruled the objection and determined that said list contained all that was required.  The petitioner excepted, and the verdict and judgment being against her, she appealed to this court.

The cause was argued before STEPHEN, ARCHER, DORSEY, and SPENCE, Judges.

· J. JOHNSON and C. F. MAYER, for the appellant, contended :

1. That the list, a copy of which was read to the jury from the records of *Allegany* county court, was not in conformity with the acts of 1796, ch. 67; 1818, ch. 201; 1823, ch. 87, and consequently was inadmissible.

2. That under the last mentioned act, it was necessary that it should appear upon the face of the list, that the negro woman (the appellant) before her introduction into this state had been a resident of some one of the *United States*, and that the list should also state the manner in which the appellee acquired title to the appellant.

R. JOHNSON and W. PRICE, for the appellee.

It is perfectly clear by the very words of the act of 1823, ch. 87, that independent of any particular mode of acquisition,

any citizen of *Maryland* has a right to import into the state a slave acquired by him in any lawful manner whatever, subject only to the obligation of recording within the period prescribed by the act of 1796, ch. 67, a list of the slave.

The only question in the case is whether, where the acquisition is neither by will nor in right of marriage, the list alluded to is to contain a statement of the importer's title? If it is, it is not because the act of 1823 in terms require it, but because it provides that the list is to be rendered *in the manner* directed by the act of 1796, for although the acts of 1804 and 1818, are also referred to, they can have no bearing upon the question, they themselves depending entirely upon the act of 1796.

The object of the provision of the act of 1796, that the list should contain a statement of the importer's title, was because the authority to import by that act was not a general one, but confined only to two cases of acquisition, and the list was therefore required to contain evidence that the party was within the act. This necessity was of course at an end, when the privilege was extended to every species of ownership, and no object was to be obtained except what the mere list would accomplish. *That* was still demanded as evidence that the provisions in the act of 1823, as to disposition here by sale, or by manumission, should not be violated. If a statement of the title is to be made, it is of course to give the true nature of the title, and when, as in this case, it is not by devise or marriage, it is not to contain a statement of either title, and if not, and the real title is to be set forth; how is it to be set forth? what is it to embrace? how much of the title is to be designated? The act of 1823 is silent upon the subject; and the very silence proves that nothing more was intended than a *mere list*, it not being to be presumed, that the legislature were ignorant, that in such a case the act of 1796, and the other acts referred to gave no rule.

STEPHEN, Judge, delivered the opinion of the court.

After a careful examination of the several acts of assembly referred to in the argument, and which have a bearing upon

the merits of this case, we have come to the conclusion, that there is no error in the judgment of the court below, and that the same ought to be affirmed.    The act of 1796, ch. 67, sec. 1, contains a general prohibition against importing or bringing into this state of any negro, mulatto, or other slaves, for sale or to reside, and provides that if such inhibition should be violated, the slave or slaves so brought in or imported should be free.    The subsequent sections of this law contain certain relaxations of the rigour of this rule, and grant permission to the owners of slaves to bring them into this state, where their titles have been acquired in a certain specified manner.    The 8th section provides that if slaves are brought into this state, under the privilege thereby granted, that is, by a person owning land in an adjoining state, and the owner acquired title to such slave or slaves, by marriage, or by will; the testator's name; the date of the will; and the place where recorded, shall be inserted in the list to be delivered to the clerk of the county ; and in case he derive title from marriage, the name of the person married is likewise required to be inserted in such list.    The list is required to be in writing, and to contain the names, sexes and ages of the slaves, and is to be signed by the owner, his overseer, or agent, and to be delivered to the clerk of the county to be recorded within three months after the bringing in or importation of such slave or slaves into this state.

The 11th section authorizes any citizen of this state who has acquired title to a slave or slaves by marriage, bequest, in course of distribution or as guardian, to bring such slave or slaves into this state, for the purpose of working or employing such slave or slaves on his land in this state, and not for sale, provided that a list of the slaves so brought in be rendered in the manner directed in the *eighth* section.    The right of sale is given to the owner after the slaves have been residents of this state for the period of three years after the importation.    This section requires that a list shall be rendered in the manner directed in the *eighth* section, and as

the privilege is a limited one, a statement of the title in the list would seem to be necessary.

The privilege granted by the act of 1818, ch. 201, is nearly similar to the 11th section of the act of 1796; and varies only in that provision of it, which restricts or confines the employment of the slave when brought into this state, to the owner's own immediate service.

By the provision of the act of 1823, ch. 87, the policy of the state upon this subject seems to have undergone a very material change; for by its enactments, the door is thrown entirely open, and all restrictions as to the manner of acquiring title are removed. It provides that if any citizen of this state, hath acquired or shall acquire, property in any slave or slaves being residents of any of the *United States*, by marriage, bequest, course of distribution, or as guardian, or by gift, or any other lawful manner, such citizen may at any time remove and bring such slave or slaves, for the purpose only of working or employing such slave or slaves within this state for his own immediate service, and not for any other purpose; provided that, a list of such slave or slaves be rendered in the manner directed by the act of 1796, ch. 67, and the act of 1804, ch. 90, and the act of 1818, ch. 201, to which this act is a supplement. By the provisions of this act, it is manifest, that no regard is had to the manner in which the title originated, or how it was acquired; if it was a lawful title, the requirements of the law are satisfied. The right of removal exists, provided a list be rendered in the manner therein directed. That list we think would be complete and perfect, and if conformed to all the requisitions of the pre-existing laws in every particular, except the statement of the manner of acquiring the title. That statement we think is clearly dispensed with, by the act of 1823, upon every principle of sound and rational construction. While the title which authorized the removal of negroes into this state was special and defined, the reason for specifying the title in the list is apparent, and founded upon good and substantial reasons; but when the right became unlimited, it is

difficult to ·conceive a reason which would influence the legislature to require its introduction into that document. So long as the privilege was special and restricted, it might be intended not only to prevent frauds upon the law, but to furnish evidence of its violation in case its provisions should be infringed. But after the limitation was removed, and the right became a general one, the reason ceased to operate; and the requirement of the pre-existing law ceased with it. We therefore think that the opinion of the court below in that respect was correct, and the admissibility of the list as evidence not being objected to upon any other ground, we affirm their judgment.

JUDGMENT AFFIRMED.